IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TASHIA M. BAGWELL
    *Plaintiff*,

    v.

DOWNTOWN PARTNERSHIP OF
BALTIMORE, INC.
    *Defendant*.

Civil Action No. ELH-18-1786

**MEMORANDUM**

In this employment discrimination case, plaintiff Tashia M. Bagwell has sued her former

employer, Downtown Partnership of Baltimore, Inc. ("Downtown"). ECF 1. Her suit contains

four counts: a claim of race discrimination in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") (Count I); wrongful discharge under Maryland

common law (Count II); disparate treatment, in violation of Title VII (Count III); and violation

of the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count IV). ECF 1.

Plaintiff seeks declaratory relief, compensatory and punitive damages, and attorney's fees and

expenses. *Id.* ¶ 35.

In response, defendant filed a partial motion to dismiss (ECF 14), supported by a

memorandum of law (ECF 14-1) (collectively, the "Motion"), as well as an answer as to Counts I

and III of the Complaint. ECF 15. In particular, defendant seeks dismissal of Counts II and IV

of the Complaint, under Fed. R. Civ. P. 12(b)(6). *See* ECF 14-1. Bagwell opposes the Motion.

ECF 19 ("Opposition"). Defendant replied. ECF 20 ("Reply").

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule

105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural Background[1]

Bagwell, an African-American woman, began her employment with Downtown on November 13, 2006, as an administrative assistant. ECF 1, ¶ 5. Downtown is a "corporation . . . engaged in the business of supporting workforce development and overseeing the largest business improvement district in Baltimore, MD." *Id.* ¶ 2.

On November 2, 2017, Bagwell received a company-wide email from Kirby Fowler, Downtown's President. *Id.* ¶ 6. The email pertained to "the promotions of two employees. Plaintiff replied to the all-staff email by congratulating those individuals." *Id.* ¶ 6. Soon after, she "received notification that Mr. Kirby was displeased with her email and that he requested a follow-up with the Plaintiff regarding such." *Id.* ¶ 7.

The next day, November 3, 2017, Bagwell "was terminated from her position due to the 'perceived negative' email." *Id.* ¶ 8. She later learned that a "non-Black co-employee" had sent "similar inappropriate emails" but was "disciplined with only a write-up" and referred to the employee assistance program. *Id.* ¶ 9.

Bagwell filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission (EEOC) on March 6, 2018. *Id.* ¶ 11. The EEOC issued a Notice of Right to Sue ("Notice") on March 15, 2018, without a finding that Downtown violated federal law. *Id.* ¶ 12. This suit followed on June 15, 2018, within the 90 day filing period provided by 42 U.S.C. § 2000e-5(f)(1).

Additional facts are included in the Discussion.

---

[1] As discussed, *infra*, in the posture of this case, I must assume the truth of the facts alleged by plaintiff.

## II.    Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.

*Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged

in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

### III.    Discussion

### A.  Count II

Count II of plaintiff's Complaint asserts the tort of wrongful discharge. ECF 1, ¶¶ 20-23. Defendant maintains that a common law wrongful discharge claim is not viable when "its public policy foundation . . . is expressed in a statute . . . that already contains a remedy for vindicating public policy objectives[.]" ECF 14-1 at 4.

Tort liability for common law wrongful discharge has been recognized in Maryland "as a judicially-created exception to the employment at-will doctrine." *Newell v. Runnels*, 407 Md. 578, 646, 967 A.2d 729, 769 (2009) (citing *Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981)); *see Molesworth v. Brandon*, 341 Md. 621, 629-30, 672 A.2d 608, 612-13 (1996). The doctrine is narrow, however.

In order to assert a viable common law claim of wrongful discharge, an employee must demonstrate that "a clear mandate of public policy . . . was contravened by the discharge." *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 423, 823 A.2d 590, 602 (2003). Moreover, the public policy must be "reasonably discernible from prescribed constitutional or statutory

mandates." *Wholey v. Sears Roebuck*, 370 Md. 38, 54, 803 A.2d 482, 491 (2002). On the other hand, because the purpose of the tort is to "provide a remedy for *otherwise unremedied* violations of public policy," *Porterfield*, 374 Md. at 423, 823 A.2d at 602 (emphasis added), the tort is not viable if the statutes that establish the public policy at issue "already provide an adequate and appropriate civil remedy for the wrongful discharge." *Id.*; *see also Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 621-26, 561 A.2d 179, 188-91(1989).

In sum, the tort of abusive discharge is limited "to cases where an employee's termination contravened a clear mandate of public policy and [where] not to allow the cause of action would leave the employee without a remedy." *Newell*, 407 Md. at 647, 967 A.2d at 769; *see Molesworth*, 341 Md. at 629-36, 672 A.2d at 612-16 (recognizing a common law cause of action for wrongful discharge of an at will employee based on sex discrimination, where the employer, based on size, is otherwise exempt from application of a statutory prohibition against such conduct).

Defendant contends that plaintiff's wrongful discharge claim must fail in light of *Makovi v. Sherwin-Williams Co.*, *supra*, 316 Md. 603, 561 A.2d 179. ECF 14-1 at 4-5. In *Makovi*, the Maryland Court of Appeals determined that "discharge motivated by employment discrimination prohibited by Title VII" and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2014 Repl. Vol., 2017 Supp.), §§ 20-601 to 20-610 of the State Government Article ("S.G."), cannot support a common law abusive discharge claim. *Id.* at 626, 561 A.2d at 190. This is because "the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy." *Id.* at 609, 561 A.2d at 182.

Plaintiff does not directly address defendant's argument. Instead, she reiterates that a public policy exception applies when an employee is terminated for attempting to exercise a legal right. ECF 19 at 4.

Title VII and MFEPA provide plaintiff with alternative civil remedies. *See Alexander v. Marriott Int'l, Inc.*, No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) (calling MFEPA "the state law analogue of Title VII."). Indeed, in this action, plaintiff brought two counts (Counts I and III) against defendant under Title VII.

Title VII and MFEPA apply only to employers with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); S.G. § 20-601(d). But, an employee may assert a common law abusive discharge claim if she has been discharged on the basis of employment discrimination by an employer that has fewer than fifteen employees. *Molesworth v. Brandon*, 341 Md. at 637, 672 A.2d at 616 (recognizing a "common law cause of action for wrongful discharge against an employer exempted" from MFEPA). Although plaintiff has not pleaded how many people are employed by Downtown, both parties appear to have implicitly conceded that Title VII and MFEPA apply to Downtown. In particular, plaintiff filed a Charge under Title VII and has brought Counts I and III under the statute. ECF 1, ¶¶ 11, 14-19, 24-27. Defendant has not sought dismissal of plaintiff's Title VII claims and has maintained that "civil remedies are available to Plaintiff under Title VII" and MFEPA. ECF 14; ECF 15; ECF 14-1 at 4.

Furthermore, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable

dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). And, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 Fed. Appx. 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds by Reed v. Town of Gilbert, Ariz.*, ⸺ U.S. ⸺ –, 135 S. Ct. 2218 (2015), *as recognized in Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)).

Of import here, defendant's staffing information is available at https://www.godowntownbaltimore.com/about/staff/index.aspx. Downtown's website suggests that it has enough employees to be subject to Title VII and MFEPA.

As a result, plaintiff's common law claim for wrongful discharge is unavailing. Accordingly, I shall dismiss Count II.

## B. Count IV

In Count IV, brought pursuant to 42 U.S.C. § 1983, Bagwell alleges that Downtown violated her rights under the First and Fourteenth Amendments, apparently for writing an email. ECF 1, ¶¶ 28-32. In its Motion, Downtown argues that plaintiff's claim fails because Downtown did not act "under the color of state law." ECF 14-1 at 6.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, ___ U.S. ___, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999); *see also West v. Atkins*, 487 U.S. 42, 49 (1988); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928-30 (1982).

To state a claim under § 1983, a plaintiff must allege: (1) that the defendant, a person, "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant acted "under color of [a State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson,* 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted), *cert. denied*, 534 U.S. 952 (2001); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil*

*Co.*, 457 U.S. 922, 929 (1982)). Thus, in order successfully to assert a claim under § 1983 for the violation of constitutional rights, the defendant must be a state actor. In other words, "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)).

In this regard, the Fourth Circuit has described the "Bill of Rights as a shield that protects private citizens from the excesses of government, rather than a sword that they may use to impose liability upon one another." *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006), *cert. denied*, 547 U.S. 1168 (2006). Notably, the Fourth Circuit has said: "'[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (alterations in *Wahi*), *cert. denied*, 558 U.S. 1158 (2010).

Certainly, "there are infrequently arising circumstances under which the actions of an ostensibly private party will be deemed to satisfy the color-of-law requirement." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009). As the Fourth Circuit has noted, "cases deciding when private action might be deemed that of the state have not been a model of consistency[.]" *Mentavlos*, 249 F.3d at 313 (citations and quotation marks omitted). But, "the critical inquiry has remained constant. After examining the relevant facts and circumstances, the inquiry in each case is whether the conduct is fairly attributable to the state." *Id.* (citations and quotation marks omitted); *see Philips*, 572 F.3d at 182 ("In the end, however, 'there is no specific formula' for determining whether state action is present . . . . 'What is fairly attributable

[to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.'") (quoting *Holly*, 434 F.3d at 292 (4th Cir. 2006) (alterations in *Philips*)).

In *Mentavlos*, 249 F.3d at 313, the Fourth Circuit explained various tests that it has employed to determine whether the conduct of a private party may be "'fairly attributable' to the State." The Court said, *id.* at 313-14:

[I]n *Andrews v. Federal Home Loan Bank,* 998 F.2d 214 (4th Cir. 1993), we identified four circumstances under which the Supreme Court had held that a private party may be deemed a state actor for purposes of § 1983 liability:

(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*Id.* at 217; *see also DeBauche v. Trani,* 191 F.3d 499, 507 (4th Cir. 1999), *cert. denied*, 529 U.S. 1033 (2000).

In *Haavistola [v. Community Fire Co. of Rising Sun*, 6 F.3d 211 (4th Cir. 1993)], another panel of this court summarized three situations in which conduct by a private entity could be fairly attributable to the state: (1) when a sufficiently close nexus exists between a regulated entity and a state such that the actions of the former are fairly treated as those of the state; (2) when the state "has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state"; and (3) "when the private entity has exercised powers that are traditionally the exclusive prerogative of the state." *[Id.]* at 215 (internal citations and quotation marks omitted).

Most recently, in *Goldstein [v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337 (4th Cir. 2000)], we emphasized the fact-based nature of the state action inquiry, reiterating that "the state action determination requires an examination of all the relevant circumstances, in an attempt to evaluate the degree of the Government's participation in the private party's activities." *[Id.]* at 342 (internal quotation marks omitted). There, we identified several considerations which are pertinent to the inquiry: (1) "whether the injury caused is aggravated in a unique way by the incidents of governmental authority"; (2) "the extent and nature of public assistance and public benefits accorded the private entity"; (3) "the extent and nature of governmental regulation over the institution"; and (4) "how the state itself views the entity, *i.e.*, whether the state itself regards the actor as a state actor." *Id.* at 343 (internal quotation marks omitted). Like its predecessors in this

circuit, however, the *Goldstein* decision summarized considerations already set forth by precedent, and did not purport to overrule our prior precedents or espouse new areas of inquiry. Indeed, *Haavistola* summarized the standard set forth by the Supreme Court in *Blum [v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)]*, *see Haavistola,* 6 F.3d at 215, which is still relied upon by the Court today, *see Brentwood* [*Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)].

The Fourth Circuit concluded by identifying "the ultimate inquiry": "Is there a sufficiently 'close nexus' between the challenged actions of [the defendants] and the State . . . such that their actions 'may be fairly treated as that of the State itself.'" *Mentavlos*, 249 F.3d at 314 (quoting *Brentwood Acad.*, 531 U.S. at 295).

Here, plaintiff fails to advance a viable allegation as to state action for purposes of § 1983. In describing the parties, plaintiff states that Downtown oversees "the largest business improvement district in Baltimore, MD." ECF 1, ¶ 2. But, plaintiff alleges no other facts indicating a "close nexus" between the defendant's actions and the state. Nor does plaintiff allege facts that would satisfy any of the Fourth Circuit's various tests to determine whether a private party's conduct may be attributed to the State. *See Mentavlos*, 249 F.3d at 313. Therefore, plaintiff does not plausibly allege state action.

Accordingly, I shall dismiss Count IV.

### IV.    Conclusion

For the reasons stated above, I shall GRANT defendant's motion to dismiss Counts II and IV. An Order follows, consistent with this Memorandum.


Date:   November 8, 2018                                    _/s/_____
                                                           Ellen Lipton Hollander
                                                           United States District Judge