IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TASHIA M. BAGWELL,
    *Plaintiff*

    v.

DOWNTOWN PARTERNSHIP OF
BALTIMORE, INC.
    *Defendants.*

Civil Action No. ELH-18-1786

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Tashia M. Bagwell, who is African American, filed suit against her former employer, Downtown Partnership of Baltimore, Inc. ("Downtown" or "DPOB"), alleging that DPOB unlawfully terminated her on the basis of her race. ECF 1 (the "Complaint"). Bagwell asserted four claims: race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count I); wrongful discharge under Maryland law (Count II); disparate treatment, in violation of Title VII (Count III); and violations of the First and Fourteenth Amendments to the Constitution, pursuant to 42 U.S.C. § 1983 (Count IV).

In response, Downtown moved to dismiss Counts II and IV of the Complaint under Fed. R. Civ. P. 12(b)(6). ECF 14. In a Memorandum (ECF 22) and Order (ECF 23) of November 8, 2018, I granted the motion as to Counts II and IV.

Now pending is DPOB's post-discovery motion for summary judgment with respect to Counts I and III, pursuant to Fed. R. Civ. P. 56. ECF 33. The motion is supported by a memorandum of law (ECF 33-1) (collectively, the "Motion") and fourteen exhibits. ECF 33-2 to ECF 33-15. Plaintiff opposes the Motion. ECF 36 ("Opposition"). The Opposition is supported

by four exhibits. ECF 36-1 to ECF 26-5. Defendant replied (ECF 37) and submitted four additional exhibits. ECF 37-1 to ECF 37-4.

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion.

## I. Factual Background

### A. Evidence Concerning Bagwell

Downtown is a "non-profit organization, with a mission that includes retaining businesses and advocating for qualify of life improvements" in Baltimore. Adam Bedmar, *Wanted Leader for Downtown Group*, THE DAILY RECORD, Jan. 15, 2020, at 3A. On November 13, 2006, Downtown hired Bagwell to serve as an administrative assistant. *See* ECF 33-2 (Bagwell Deposition) at 5, Tr. 14. Her job responsibilities included filing documents, creating employee folders, answering phone calls, handling mail, stocking the mailroom, assisting with payroll, and processing new employees. *Id.* at 7, Tr. 21.

While at DPOB, Bagwell was disciplined on multiple occasions. On May 1, 2009, Downtown's Director of Human Resources, Debbie Campbell, issued a "Disciplinary Warning Letter" to Bagwell. ECF 33-2 at 9, Tr. 31; ECF 33-4 (Letter of May 1, 2009). In the letter, Campbell stated that, despite "numerous" conversations with Bagwell "regarding taking initiative and being proactive in [her] day to day job responsibilities," Bagwell's job performance "ha[d] not improved." ECF 33-4. Campbell also referred to earlier discussions with Bagwell in January, February, and March of 2009. *Id.* And, she identified several tasks that Bagwell had failed to complete, adding that Bagwell was spending too much time on her personal cell phone and surfing the web. *Id.* Bagwell was warned that further violations could lead to termination. *Id.*

2

Plaintiff received a verbal warning on May 9, 2013, from Campbell and Michele Rutkowski, Downtown's Chief Operation Officer. ECF 33-2 at 10, Tr. 34; *see* ECF 33-5 (Letter of December 10, 2013). The warning stemmed from Bagwell's failure to perform work tasks in a timely manner. ECF 33-2 at 10, Tr. 34-35. Then, on December 10, 2013, Campbell issued another disciplinary letter to plaintiff. ECF 33-5. Campbell identified several issues with Bagwell's performance, including poor time management, extended periods of absence, and lack of communication with her supervisors. *Id.*

Downtown disciplined Bagwell again in March 2017. In a Memorandum dated March 6, 2017 (ECF 33-6), Campbell explained that on March 1, 2017, she entered Bagwell's office to retrieve employee files that she needed to perform an audit. *Id.* In doing so, she discovered "piles and piles of paperwork that hadn't been filed in 6 months or longer." *Id.* This shocked Campbell because plaintiff had been told repeatedly that her "'filing needs to get under control and better managed'" and that "'keeping up with filing should be a top priority[.]'" *Id.*

According to Campbell, Bagwell's failure to maintain accurate records was "a complete dereliction of [her] duties[.]" *Id.* Therefore, Downtown suspended Bagwell for three days, without pay. *Id.* To keep her position at Downtown, plaintiff was required to complete all delinquent filings within five days upon returning. *Id.* Further, plaintiff was placed on a six-month probationary period during which Bagwell could face further disciplinary action, including termination, if her performance did not improve. *Id.* The Memorandum was signed by Bagwell, Campbell, and Rutkowski. *Id.*

On November 2, 2017, at 4:10 p.m., John Kirby Fowler, Jr., the President of Downtown, sent an e-mail to all DPOB staff. ECF 33-7. The email announced the merger of Downtown's two "Park Steward teams." *Id.* In addition, Mr. Fowler announced two promotions. He stated:

3

"As a result of the expanded responsibilities and personnel on the Parks Team, I am delighted to inform you that Shannon Brown has been promoted to Senior Director and Brandon Kelly has been promoted to Director. As you know, they are truly deserving of these promotions. Please be sure to congratulate them!" *Id.*

Nine minutes later, Bagwell send an email to Fowler and all of Downtown's staff. It stated, in its entirety: "Congratulations Brandon! Well deserved!" ECF 33-8.

Fowler called Rutkowski on November 2, 2017, to express his unhappiness with Bagwell's email. ECF 33-9 (Rutkowski Deposition) at 3, Tr. 24. Fowler perceived Bagwell's email to be inappropriate because it mentioned Kelly but not Brown. ECF 33-10 (Fowler Deposition) at 4, Tr. 41. At his deposition, Fowler stated: "I believe it is obvious that when someone excludes somebody from a congratulatory email and sends it out to 40-plus individuals, that they're excluding a person on purpose." *Id.*

According to Rutkowski, Fowler instructed her to speak with Bagwell and to tell Bagwell to send a corrected email congratulating both parties. ECF 33-9 at 4, Tr. 25. Rutkowski then went to talk with Bagwell in her office. ECF 33-2 at 16, Tr. 59. According to plaintiff, Rutkowski told her that Fowler "was not pleased with [her] email" and asked "if [she] could send out a follow-up email congratulating Shannon as well." *Id.* Bagwell responded, "'Do I have to?'" *Id.*, Tr. 59, 60. Rutkowski responded, "'No, you don't have to, but Kirby is going to want to have a conversation with you.'" *Id.* Bagwell told Rutkowski that she would speak with Fowler. *Id.*

Although Bagwell knew that Fowler was upset about her email, and that he had asked her to send a follow-up email to congratulate both Brown and Kelly, plaintiff did not do so. *Id.*, Tr. 61. She explained that she "didn't feel the need to send one," *id.*, and "didn't see that there was

an issue with the email that [she] sent." *Id.*, Tr. 61-62.  She also claimed that she "felt bullied" by Rutkowski.  *Id.*, Tr. 61.

After Rutkowski met with Bagwell, Rutkowski told Fowler of her conversation with Bagwell.  ECF 33-10 at 8, Tr. 57.  Rutkowski related to Fowler that she told Bagwell that Fowler was displeased with her email, that he wanted her to send a follow-up email, and that Bagwell did not want to do so.  *Id.*, Tr. 57-58.  Fowler then sent Bagwell the following email at 5:04 p.m. on November 2, 2017: "I'm extremely disappointed in you. Very unprofessional and divisive."  ECF 33-11.  Bagwell did not respond.

At his deposition, Fowler stated that he decided to terminate Bagwell after learning from Rutkowski that Bagwell "refused to send a follow-up email with no explanation."  ECF 33-10 at 12, Tr. 88; *see id.*, Tr. 87; *id.* at 13, Tr. 102.  He added, *id.* at 12, Tr. 85: "I still don't know why she did not send a follow-up e-mail . . . the first email was problematic . . . when she did not want to send a follow-up e-mail [that] was [also] problematic."  Further, he stated, *id.*: "And if I hadn't terminated [Bagwell] and just let it go, I would not be able to have the kind of morale I want in the organization and people would think that I was not able to control the morale of the organization."

Fowler met with Rutkowski and Campbell on November 3, 2017, to discuss Bagwell.  *Id.* at 5, Tr. 46.  Campbell and Rutkowski expressed their belief that Bagwell's behavior did not warrant her termination.  *See id.* at 7, Tr. 54.  However, after Fowler explained why he felt Bagwell's continued employment would be problematic, they agreed to terminate her.  *Id*. at 6, Tr. 51-52.

Campbell and Rutkowski terminated Bagwell during an in-person meeting on November 3, 2017. ECF 33-2 at 19, Tr. 70; *see also* ECF 33-12 (Termination Letter of Nov. 3, 2017).[1] Rutkowski gave Bagwell a copy of the Termination Letter, which was signed by Rutkowski. ECF 33-2 at 19; ECF 33-12. The Termination Letter stated that plaintiff's termination was due to her "(1) Failure to meet the standards and expectations established for this organization"; "(2) Misuse of email"; and "(3) Deliberate attempt to undermine morale." ECF 33-12. It also stated, *id.*:

> Downtown Partnership prides itself on good communication between employees. On Thursday November 2, 2017 our President sent out an All Staff email informing every one of two promotions in our Events Department. You replied with an All Staff email in a perceived negative fashion when only congratulating one of the two promotions that Kirby mentioned. Immediately I came into your office expressing how unhappy Kirby was with your email and he wanted you to send a follow up email out. You hesitated and asked if you had to send the email. I said no that you didn't have to, but I reiterated again how unhappy Kirby was and he is going to want to have a conversation with you. You responded to me that you would have the conversation with Kirby.
>
> This kind of negative message does not align with the positive morale DPOB tries to create . . . . We must treat co-workers with respect. . . .

According to plaintiff, Campbell left during the meeting to ask Fowler if he would speak with Bagwell. ECF 33-2 at 19, Tr. 71. However, Campbell returned and said that Bagwell could write to Fowler if she had something to say. *Id.*

### B. Evidence Pertaining to Tongson

Lito Tongson is employed at Downtown as a "director." ECF 33-2 at 23, Tr. 86. In that role, Tongson helps to manage Downtown's various projects, including the coordination with construction contractors to ensure that job sites are free of hazards and debris. *See* ECF 33-13 (May 6, 2015 Emails) at 1. Tongson is not African-American. ECF 33-10 at 10, Tr. 80.

---

[1] Although the termination was effective as of November 3, 2017, Bagwell was paid through November 17, 2017. *See* ECF 33-12.

On May 6, 2015, Fowler sent Tongson an email concerning a development site that Tongson was managing. ECF 33-13. Fowler described his email as telling Tongson, in effect, that the site was "'messy'" and that it "'need[ed] to be addressed.'" ECF 13-10 at 11, Tr. 81. According to Fowler, Tongson responded with an aggressive email. *Id.* Tongson's email stated, EEC 33-13 at 1:

> Kirby,
>
> FOR THE RECORD.
>
> Machado removed everything from the job site; pavers, conduit, fencing, wooden stakes, concrete pipe, equipment, and materials for the electrical installation. This was the result of the riots and request by the City of Baltimore. They have not been on the job site since.
>
> The trash and debris that you're talking about is NOT a result of Machado's work. However, in the spirit of cooperation, as Machado has done THROUGHOUT the entire project, will clean trash and debris left by CVS. They did this when Shack Shack [sic], Chick Fil A opened as well. We have been asking Myron to have Leibowitz's contractor clean their mess and it has gone ignored.

Two persons outside of Downtown were copied on the email. ECF 33-10 at 10, Tr. 80.

Tongson sent Fowler an email the following day, May 7, 2015, apologizing for his earlier email. Tongson stated that he had tried to call Fowler and that he would stop by Fowler's office the next day, "[b]ut [he] did not want to wait another day to go by to apologize for the tone and content of [his] email." ECF 33-14 at 2. Tongson added that his "frustration" was meant for others, and he had already asked the contractor to tidy up the project site, as Fowler had requested. *Id.* Fowler responded to Tongson's email, thanking him for his hard work at DPOB. *Id.*

In addition to the email, Tongson initiated a meeting with Fowler during which Tongson again apologized for his email. ECF 33-10 at 11, Tr. 84. Nevertheless, Downtown disciplined Tongson for the email by referring him to its the Employee Assistance Program ("EAP"). *Id.* at 10, Tr. 80.

7

## II. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black &*

*Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

### III. Discussion

### A. Title VII

As noted, plaintiff alleges race discrimination and disparate treatment under Title VII. ECF 1. Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see e.g., Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207-08 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

In general, *at trial* a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). At summary judgment, these two avenues merely inform a court's evaluation of the evidence. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019).

Under the first avenue of proof, a plaintiff may offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997); *see Rhoads v. F.D.I.C.*,

257 F.3d 373, 391 (4th Cir. 2001). Direct evidence of discrimination is "'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch v. Ohio Casualty Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)). "To avoid summary judgment" when proceeding under ordinary principles of proof, "'the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Rhoads*, 257 F.3d at 391 (internal citations and quotation marks omitted; alteration in original).

Alternatively, where, as here, there is no evidence of direct discrimination, the plaintiff may utilize the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young*, U.S. at 212 (construing the Pregnancy Discrimination Act); *Guessous*, 828 F.3d at 216 (discussing the *McDonnell Douglas* framework). The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted).

If the plaintiff chooses to proceed under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). The precise formulation of the required prima facie showing will vary in "different factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13.

To establish a prima facie claim of racial discrimination under *McDonnell Douglas*, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc.*, Inc., 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see also Haynes*, 922 F.3d at 223; *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Haynes*, 922 F.3d at 223. "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.

At that point, the burden of production shifts back to the plaintiff to prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam); *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason

12

was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original). A plaintiff may prove that the employer's proffered reason for its employment decision was a pretext by presenting evidence that directly contradicts the employer's proffered justification, "or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two avenues of proof establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. On summary judgment, however, these approaches merely help to guide a court's evaluation of the evidence. *Haynes*, 922 F.3d at 223; *Cf. Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff

13

asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").

Moreover, the Fourth Circuit has admonished district courts to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'" *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*; internal quotation marks omitted). The Court has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*,'" and that, "[b]y the time of appeal especially, the issue boils down to whether the plaintiff has presented a triable question of intentional discrimination." *Merritt*, 601 F.3d at 294-95 (citation omitted).[2]

When the question at issue is whether the "'decision maker'" acted with discriminatory animus, only the "'perception of the decision maker'" is "'relevant'" to the question. *Hux v. City of Newport News*, 451 F.3d 311, 319 (4th Cir. 2006) (citation omitted). Indeed, employment discrimination statutes do "not remedy everything that makes an employee unhappy." *Jeffers v. Thompson,* 264 F. Supp. 2d 314, 329 (D. Md. 2003) (discussing Title VII). In assessing a defendant's proffered reasons, the Fourth Circuit has "repeatedly observed" that it is not a court's

---

[2] Where the employer proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment, the Fourth Circuit sometimes assumes, without deciding, that the plaintiff established a prima facie case. *See, e.g.*, *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319-20 (4th Cir. 2005); *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008); *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 736-37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002).

"'province to decide whether an employer's reason for terminating an employee was wise, fair, or even correct, ultimately, so long as it truly was the reason for the employee's termination.'" *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 211 (4th Cir. 2014) (brackets omitted) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citation and internal quotation marks omitted)). In short, an employment discrimination claim "is not a vehicle for substituting the judgment of a court for that of the employer." *DeJarnette*, 133 F.3d at 298-99 (citation omitted).

**B. Analysis**

Downtown advances two grounds to support its claim that it is entitled to summary judgment with respect to plaintiff's Title VII claims. ECF 33-1 at 10-17. First, Downtown asserts that Bagwell has not established a prima facie case of discrimination under *McDonnell Douglas* because she has failed to provide evidence of a valid comparator. According to Downtown, Tongson cannot serve as Bagwell's comparator because their jobs are dissimilar and the underlying conduct that resulted in disciplinary action was qualitatively different. *Id.* at 11-12. Second, Downtown argues that even if Bagwell established a prima facie case of discrimination, she has failed to put forth any evidence that Downtown's proffered non-discriminatory reason for her termination was pretextual. *Id.* at 15-17.

A plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), *cert. denied*, 562 U.S. 1219 (2011). However, where the plaintiff proceeds on a theory of disparate treatment under *McDonnell Douglas*, "the validity of their prima facie case depends upon whether that comparator is indeed similarly situated." *Id.* And, "it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." *Burdine*, 450 U.S. at 258.

15

As the Fourth Circuit has acknowledged, this comparative inquiry "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Haynes*, 922 F.3d at 223 (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)); *see Irani v. Palmetto Health*, 767 Fed. App'x 399, 420 (4th Cir. 2019) (per curiam). But, courts cannot compare apples to oranges. Title VII requires that the comparator be "similarly situated" in all relevant aspects. *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014).

In order to establish an appropriate comparator in a race discrimination case, "the plaintiff must produce evidence that the plaintiff and the comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes*, 922 F.3d at 223 (alterations in *Haynes*) (quoting *Haywood*, 387 F. App'x at 359). Further, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

The recent case of *Haynes*, 922 F.3d 219, is illustrative. There, Haynes, who is black, alleged that he was terminated by his employer, Waste Connections, on the basis of his race, in violation of Title VII. *Id.* at 221. Haynes provided evidence that he drove a dump truck, was supervised by a white person name named James Fountain, and was fired after receiving three infractions. *Id.* at 221-23. To prove disparate treatment, Haynes pointed to a white employee, Joe Hicks. *Id.* at 223. The Fourth Circuit determined that Haynes and Hicks were sufficiently similar for the purposes of Title VII. *Id.* at 224. The Court stated, i*d.*:

> Haynes has produced evidence that Joe Hicks, a white employee also supervised by Fountain, had several workplace infractions, including twice using a

cellphone while driving, driving while distracted, and responding to a traffic situation late. Haynes also pointed to evidence, which appears undisputed, that Hicks became angry and yelled at Fountain before quitting his job. Yet, Hicks was permitted to return to his job, and Haynes, who had fewer infractions and did not yell at his supervisor, was not permitted to return to his job and instead had his employment terminated. Considering this evidence, a reasonable fact finder could conclude that Hicks and Haynes were appropriate comparators, because they dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct.

The same cannot be said here. At the outset, Bagwell has not clearly established that she and Tongson held similar positions at Downtown. Whereas the plaintiff and the comparator in *Haynes* held the same job, Bagwell and Tongson occupied very different positions. Tongson worked as a director, a job that entailed overseeing Downton's work sites and coordinating with contractors to complete projects. *See* ECF 33-2 at 23, Tr. 86; *see also* ECF 13-3. In contrast, plaintiff worked as an administrative assistant, whose primary responsibilities included filing papers, answering the phones, and assisting with recordkeeping. ECF 13-2 at 7, Tr. 21. Second, unlike in *Haynes*, Tongson and Bagwell did not share the same supervisor. According to Fowler, Tongson was directly managed by Bob Dengler, the Vice President of Downtown. ECF 33-10 at 10, Tr.80. On the other hand, plaintiff acknowledges that she was supervised by Rutkowski and Campbell. ECF 33-2 at 7, Tr. 23. Third, plaintiff and Tongson have different employment histories. While at Downtown, plaintiff was formally disciplined twice, received one verbal warning, and was placed on a six-month probationary period due to her poor job performance. ECF 33-4; ECF 33-5; ECF 33-6. On the other hand, the record does not indicate that Tongson was disciplined beyond him being referred to EAP one time in 2015. Thus, in stark contrast to *Haynes*, the evidence in the record would not permit a reasonable factfinder to conclude that Bagwell and Tongson are similar employees in all relevant respects.

In an effort to overcome these significant differences, plaintiff retreats to a higher plane of abstraction. ECF 36 at 5. She argues that Tongson is an appropriate comparator because both she and Tongson "report to Fowler as he is the CEO of the organization," "are held to the same standards of the organization," "were part of the administrative staff," and have job duties that "include interaction with the public." *Id.* But, Title VII does not permit such generalized comparisons. *See Irani*, 767 F. App'x at 420 (plaintiff's comparators were not sufficiently similar because they did not have comparable disciplinary histories); *Lightner*, 545 F.3d at 265 (rejecting comparison evidence as "too loose" because plaintiff and comparator held different job positions).

Moreover, plaintiff and Tongson did not engage in similar conduct. Tongson sent an aggressive email to four individuals, two of whom were Downtown employees and two of whom worked outside the organization. ECF 33-10 at 10. His frustration was directed to Fowler, not other employees. In contrast, Bagwell sent an email to the whole staff, congratulating only one of two employees who were promoted. That conduct was perceived to be offensive and divisive. ECF 33-8.

Critically, Tongson quickly sought to remedy his inappropriate email. ECF 33-10 at 11, Tr. 84. Without prompting, Tongson apologized to Fowler the day after his email. ECF 33-14 at 2. Moreover, he followed Fowler's initial directive and spoke with the contractor to resolve the issues that had prompted Fowler's initial email. *Id.* In sharp contrast, plaintiff took no such corrective action. Instead, when Rutkowski informed Bagwell that her email was perceived to be negative and that she should send a follow-up email, Bagwell responded by asking if she had to comply with Fowler's request. ECF 33-2 at 16, Tr. 60. Although Bagwell said she would speak to Fowler, she never contacted him, even after receiving an email from Fowler voicing his

frustration. In sum, plaintiff cannot use Tongson to establish a disparate treatment claim because their conduct is not materially analogous.

Ultimately, "there are simply not 'enough common features between the individuals to allow for a meaningful comparison.'" *Hurst*, 681 F. App'x at 193 (cleaned up and citation omitted). As a result, plaintiff has failed to put forth sufficient evidence to make a prima facie showing of racial discrimination under *McDonnell Douglas*.

Alternatively, even assuming that plaintiff established a prima facie case of discrimination, the employer has produced ample evidence of a legitimate, non-discriminatory reason for the adverse employment action. Plaintiff has not shown that the proffered reason was a pretext; she has produced no evidence to show either that the stated reason for termination was false or that discrimination was the actual reason for the termination.

Notably, "the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a genuine dispute, the latter would fail to be material." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007) (internal quotations omitted). Rather, to show pretext, a plaintiff must proffer sufficient evidence such that a reasonable trier of fact could conclude that the employer's explanation is false or "'unworthy of credence,'" *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Burdine*, 450 U.S. at 256), and that discrimination was the true reason for the adverse employment action. *Hicks*, 509 U.S. at 515 (plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason") (emphasis in *Hicks*); *accord Adams*, 640 F.3d at 560.

Accordingly, defendant is entitled to summary judgment with regard to Bagwell's Title VII claims.

## IV. Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 33). An Order follows, consistent with this Memorandum Opinion.


Date: January 15, 2020           _____/s/_____
                                 Ellen L. Hollander
                                 United States District Judge